IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARRISON ARNELL JONES, | ) | |
| PETITIONER, | ) ) ) | CR12-37E CV14-87E |
| vs. | ) ) | |
| UNITED STATES OF AMERICA | ) ) | |

## OPINION AND ORDER

Petitioner Harrison Arnell Jones ("Petitioner" or "Jones") filed a Motion to Vacate, Correct or Set Aside a Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 on March 13, 2014 [ECF 91] and Brief in Support of Motion to Vacate, Correct or Set Aside a Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 [ECF 92] ("Petitioner's Supporting Brief"). The Government filed its Response to Petitioner's Motion to Vacate on August 15, 2014 [ECF 100]. On September 15, 2014, Petitioner filed his Answer to the Government's Response for Petition to Vacate, Set Aside or Otherwise Correct a Sentence by a Person in Federal Custody [ECF 101] ("Petitioner's Supplemental Answer").

In support of Motion to Vacate, Jones argues:

> Petitioner Jones only accepted his plea bargain on the basis of his attorney's assurance that his juvenile convictions would not be held against him, which would result in a sentence of 70 to 87 months. At no time, did Petitioner Jones comprehend that be could ever actually receive a sentence of 188 to 235. It is Gene Placidi's failure to explain the possible results of the plea bargain that constitutes deficient performance. As such, Petitioner Jones has been deprived of his substantial liberty interest because his plea acceptance was not truly knowing, willing or intelligent.

Petitioner's Supporting Brief, p. 1. See also Id. at p. 3 ("Petitioner Jones only agreed to his plea on the basis of accepting his attorney's advice that his juvenile conviction would not be held against him and that he could defeat this issue at sentencing"); Id. at p. 4 ("Petitioner Jones

1

received a sentence of 10 years more than he anticipated based upon counsel's hopeful assertions regarding his juvenile convictions."); Petitioner's Supplemental Answer, p. 1 ("Petitioner Jones only accepted his plea on the assurance of his counsel that he would only receive 70-87 month sentence).

## I. Background.

A federal grand jury charged Jones by Indictment with knowingly, intentionally and unlawfully conspiring to possess with intent to distribute and distribute twenty-eight (28) grams of more of crack cocaine, in violation of 21 U.S.C. § 846. On December 14, 2012, Jones entered a guilty plea pursuant to a written plea agreement that included a waiver of his collateral appeal rights as well as a stipulation that Jones was a "career offender" under § 4B1.1 of the United States Sentencing Guidelines ("U.S.S.G."), that his overall offense level under the U.S.S.G. was a 31, that as a career offender Jones's' criminal history category was a VI, and that his guidelines sentencing range under the U.S.S.G. was 188 months to 235 months. The Presentence Investigative Report ("PSR") indicated that Jones was a career offender within the meaning of U.S.S.G. § 4B1.1 and that based on an offense level of 31 and a criminal history category of Roman numeral VI, Jones's advisory guideline sentencing range was 188 to 235 months' imprisonment.

On June 14, 2013, the Court granted a one-level downward departure of Jones's criminal history category, from a VI to a V, pursuant to U.S.S.G. § 4A1.3, which resulted in a guideline range of 168 to 210 months. The Court then sentenced Jones to 168 months imprisonment to be followed by five years' supervised release. On July 19, 2013 an Amended Judgment was entered pursuant to Fed.R.Crim.P. 36 for correction of a clerical mistake; Jones's sentence of 168 months imprisonment to be followed by five years' supervised release was unchanged.

2

## II. Standard of Review under 28 U.S.C. § 2255.

Section 2255 of Title 28 of the United States Code provides a means of collaterally attacking a sentence imposed after a conviction. United States v. Cannistraro, 734 F.Supp. 1110 (D.N.J. 1990). Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Relief under this provision is "generally available only in 'exceptional circumstances' to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." United States v. Gordon, 979 F. Supp. 337, 339 (E.D. Pa. 1997) (citing Hill v. U.S., 368 U.S. 424, 428 (1962)).

The Court must consider the motion together with all the files, records, transcripts and correspondence relating to the judgment under attack. See 28 U.S.C. § 2255, Rule 4(b). A district court considering a § 2255 motion "'must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record,'" U.S. v. Booth, 432 F.3d 542, 545 (3d Cir. 2005) (quoting Government of Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989)), and it "abuses its discretion if it fails to hold an evidentiary hearing when the files and records of the case are inconclusive as to whether the movant is entitled to relief." Booth, 432 F.3d at 546 (citing U.S. v. McCoy, 410 F.3d 124, 134 (3d Cir. 2005)). However, the final disposition of a § 2255 motion lies with the discretion of the trial judge, see Government of Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985), and a district court may summarily dismiss a § 2255 motion where the motion, files and records "show conclusively that

3

the movant is not entitled to relief." U.S. v. Mason, 2008 WL 938784, 1 (E.D. Pa. 2008), citing Forte, 865 F.2d at 62.

### III. Legal Analysis.

#### A. Evidentiary Hearing.

We address first Petitioner's entitlement to an evidentiary hearing on his § 2255 Motion to Vacate. When a motion is made under 28 U.S.C. § 2255, the question of whether to order a hearing is committed to the sound discretion of the district court. In exercising that discretion, the court must accept the truth of the Petitioner's factual allegations unless they are clearly frivolous on the basis of the existing record. U.S. v. Day, 969 F.2d 39, 41-42 (3d Cir. 1992). Further, the court must order an evidentiary hearing to determine the facts unless the motion and files and records of the case show conclusively that the petitioner is not entitled to relief. Id.; Gordon, 979 F. Supp. at 339.

The Court finds that an evidentiary hearing is not required with respect to Petitioner's §2255 Motion because, for the reasons set forth below, even if each of Petitioner's contentions is accepted as true, the motion, files and records of this matter show conclusively that Jones is not entitled to relief.

#### B. Waiver of Collateral Rights.

We next address the fact that Petitioner agreed in his Plea Agreement to waive his right to file a Motion to Vacate Sentence under 28 U.S.C. § 2255. See December 14, 2012 Plea Agreement, ¶ A(5) ("HARRISON ARNELL JONES further waives the right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence."). Petitioner argues that a defendant cannot waive a future right, especially one that rests "upon an unrecognized

4

Constitutional violation." Petitioner's Supplemental Answer, p. 1.

Contrary to Petitioner's argument, it is well established that "[a] criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution." U.S. v. Khattak, 273 F.3d 557, 561 (3d Cir. 2001), citing U.S. v. Mezzanatto, 513 U.S. 196, 201 (1995). Such waivers are enforceable "provided that they are entered into knowingly and voluntarily and their enforcement does not work a miscarriage of justice." U.S. v. Mabry, 536 F.3d 231, 237 (3d Cir. 2008), citing Khattak, 273 F.3d at 561. This includes a defendant's ability to waive the right to file a § 2255 Motion to Vacate Sentence. Mabry, 536 F.3d at 241; see also Khattak, 273 F.3d at 561 ("[t]he ability to waive statutory rights ... logically flows from the ability to waive constitutional rights."). Thus, if the Court finds that Jones knowingly and voluntarily agreed to waive his right to file a § 2255 Motion to Vacate Sentence and the enforcement of the waiver does not work a miscarriage of justice, then we must enforce the waiver and deny the motion.

We have "an independent obligation to conduct an evaluation of the validity of a collateral waiver." Mabry, 536 F.3d at 238. Specifically, we must examine the "(1) knowing and voluntary nature, based on what occurred and what defendant contends, and (2) whether enforcement would work a miscarriage of justice." Id. at 237. "Whereas a defendant bears the burden of presenting an argument that would render his waiver unknowing or involuntary, a court has an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record evidence before it." Id. at 237-238, citing Khattak, 273 F.3d at 563.

### 1. Knowing and Voluntary Nature of the Waiver.

With regard to whether Petitioner's waiver of his right to file a Motion to Vacate Sentence under 28 U.S.C. § 2255 was knowing and voluntary we must, at a minimum, "review[] the terms of the plea agreement and colloquy and address[] their sufficiency." Mabry, 536 F.3d at 239. Pursuant to his Plea Agreement, Jones agreed to "waive[] the right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence." Plea Agreement, ¶A(5). Jones signed the Plea Agreement acknowledging that he understood the terms of the Agreement. Plea Agreement, p 6. We find the terms of the Plea Agreement to be sufficient and clear with regard to the waiver of Jones's rights to collaterally attack his sentence or conviction.

We further conclude that the knowing and voluntary nature of Petitioner's waiver was reinforced during the plea colloquy. Jones was determined to be competent to plead. Transcript of December 14, 2012 Change of Plea ("Plea Transcript"), p. 5. The Court explained to Jones what his rights would be if he went to trial. Plea Transcript, pp. 6-8. Count One of the Indictment was read to Jones, and the Court explained what the Government would have to prove at trial with respect to the charge of conspiracy to possess with the intent to distribute and distribution of 28 grams or more of cocaine base, in violation of 21 U.S.C. § 846. Id. at pp. 9-10.

The Court also explained the penalties to which Jones would be subjected. Id. at pp. 10-11. He explained that knowingly, intentionally and unlawfully conspiring to possess with intent to distribute and distribute twenty-eight (28) grams of more of crack cocaine, in violation of 21 U.S.C. § 846 calls for a term of imprisonment of not less than five years to a maximum of forty (40) years, a fine not to exceed $5 million, and a term of supervised release of at least four (4) years. Id. at p. 10. The Court further explained that for a second felony drug conviction that is

final, whether federal, state or foreign, then the penalties are a term of imprisonment of not less than 10 years to a maximum of life, a fine of $8 million, a $100 special assessment, and a term of at least eight years. Id. at pp. 10-11. When the Court asked Jones if he understood the maximum penalties applicable to the crime, he stated, "Yes, sir." Id. at p. 11.

The terms of the Plea Agreement were then discussed. Id. at p. 12-13. Relevant to our inquiry, the Government stated that the Plea Agreement included Petitioner's waiver of "the right to file a motion to vacate sentence under Title 28, United States Code, Section 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence." Id. at p. 12.

The Government then emphasized this waiver: "Your Honor, in light of Mr. Jones' letter to the court that you went over with [defense counsel] earlier, Mr. Jones needs to recognize that that paragraph precludes him from raising any ineffectiveness of counsel claims in a 2255 petition. " Id. at p. 12. The Government's statement was in reference to the Court's earlier discussion with Jones about a letter he had sent to the Court in which he had "said in it that [he was] giving notice that [defense counsel] is removed as counsel, be it ineffective assistance of counsel." Id. at p. 2. With respect to the letter, upon seeing Jones sitting at counsel table with his attorney at the start of the change of plea hearing, the Court had asked Jones: "Am I correct in assuming that by virtue of the fact that you're sitting there next to [defense counsel], you have rethought that position and you have decided that you are willing to proceed with [defense counsel] as counsel and you want to do so, is that correct?" Id. at p. 2. Petitioner responded "Yes, your Honor." Id. at p. 2. The Court then stated: "But just to finish the discussion and put a finer point on it, you are not contending now, are you, sir, that [defense counsel] is or was in any way ineffective in his representation of you?" Id. at pp. 2-3. Petitioner answered "No, Sir." Id. at p. 3.

The Court asked again, "You're not contending that now, are you?" Id. at p. 3. Jones answered "No, Sir." Id. at p. 3.

At the conclusion of the Government's recitation of the terms of the Plea Agreement, it was signed Petitioner and his counsel. Id. at p. 14. The Court then queried: (1) "Mr. Jones, before you came to court today, did you have an opportunity to read and review the plea agreement and discuss it with your lawyer?;" (2) "Do you agree with all of its terms and conditions?;" (3) "Do you understand it?;" (4) "Do you understand that by virtue of just signing the plea agreement, as you did here in open court, you are once again attesting to the fact that by virtue of your signature you agreed with everything that's in it?;" and (5) "Do you also understand, as Mr. Piccinini pointed out a minute ago, that in addition to waiving your right to take a direct appeal, you have also waived your right to collaterally challenge these proceedings in any way, such as a Habeas Corpus petition, alleging any number of things, including that your lawyer was ineffective; you understand you waived that right, don't you?". Id. at pp. 14-15. To each and every one of these questions, Petitioner answered "Yes, Sir." Id. at pp. 14-16.

The Court further asked Jones "has anybody made any promise, other than the plea agreement, that has induced or caused you to plead guilty today?". Id. at p. 15. Petitioner replied "No, sir." Id. at p. 15. The Court also asked: "Do you understand that if the sentence is more severe than you expected it to be, you will still be bound by your guilty plea and you'll have no right to withdraw it?." Id. at p. 17. Petitioner answered "Yes, sir." Id. at p. 17. The Court further asked: (1) "Except for your discussions with [defense counsel] about Sentencing Guidelines, has anybody made any prediction or promise to you about what your sentence will be?;" (2) "Has anything that I have said here today suggested to you what your actual sentence will be?;" and (3) "Have you been instructed by your counsel, by government counsel, or by

anybody else to respond untruthfully to any question about a promised sentence?". Id. at p. 17. Petitioner responded "No" to each of these questions. Id. at pp. 17-18.

Federal Rule of Criminal Procedure 11(b)(1)(N) requires that before accepting a plea of guilty, the district court "must inform the defendant of, and determine that the defendant understands"..."the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Fed. R. Crim. P. 11(b)(1)(N). For the purposes of the present analysis, we find that Jones's guilty plea to Count 1 of the Indictment was knowing and voluntary and that specifically, his waiver of his rights to collateral attack his sentence or conviction, including his right to file a Motion to Vacate pursuant to 28 U.S.C. § 2255 on the basis that his defense counsel rendered ineffective assistance of counsel was knowing and voluntary.

### 2. Miscarriage of Justice

Having concluded that Jones's waiver of his right to file a § 2255 Motion to Vacate Sentence was knowing and voluntary, we next address whether enforcement of the waiver "would work a miscarriage of justice in this case." Mabry, 536 F.3d at 239. In undergoing this analysis, we are to use a "common sense approach" and "look to the underlying facts to determine whether a miscarriage of justice would be worked by enforcing the waiver." Id. at 242-243. There is no identified list of specific circumstances to consider before invalidating a waiver as involving a miscarriage of justice. Id. The Third Circuit, however, has "endorsed the methodology of the Court of Appeals for the First Circuit," and instructed that we should consider "'the clarity of the error, its gravity, its character (*e.g.*, whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant

9

acquiesced in the result...'" Id. at 242-243 (quoting U.S. v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001)).

As stated previously, in order to determine if Jones suffered a miscarriage of justice, we must address Jones's argument that his counsel was ineffective because defense counsel did not explain to Jones prior to Jones signing the Plea Agreement that Jones could be sentenced to 188 to 235 months imprisonment and instead defense counsel assured Jones that his juvenile convictions would not be held against him, which would result in a sentence of 70 to 87 months imprisonment.

The mere allegation of ineffectiveness of counsel will not automatically invalidate a knowing and voluntary waiver of a collateral attack. Mabry, 536 F.3d at 243. "A claim of ineffective assistance requires a defendant to establish that counsel's representation fell below an objective standard of reasonableness and that the deficient performance prejudiced the defendant." McAleese v. Mazurkiewicz, 1 F.3d 159, 166 (3d Cir. 1993) (citing Strickland v. Washington, 466 U.S. 668, 687-688 (1984)). "To establish prejudice, a defendant must demonstrate that there is a 'reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Weeks v. Snyder, 219 F.3d 245, 257 (3d Cir. 2000) (quoting Strickland, 466 U.S. at 694).

As explained by Chief Judge Conti in Williams v. U.S., 2014 WL 4060263 (W.D. Pa. Aug. 14, 2014):

> The Court of Appeals for the Third Circuit has "long held that an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where ... an adequate plea hearing was conducted." *United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007); *United States v. Jones,* 336 F.3d 245, 254 (3d Cir. 2003); *Sepulveda v. United States,* 69 F.Supp.2d 633, 641 (D.N.J. Sept. 28, 1999) (citing *Masciola v. United States,* 469 F.2d 1057, 1059 (3d Cir. 1972)). A defendant's right to be apprised of the court's sentencing options is set forth in Federal Rule of Criminal Procedure 11(c)(1). FED. R. CRIM. P. 11(c)(1). Where a district court,

> at the plea colloquy, advises a defendant of both the minimum and maximum potential sentence under the statute, and explains the guidelines sentencing process, including that the court has discretion in sentencing, and where a defendant confirms under oath that there are no other agreements or promises regarding his potential sentence, there can be no ineffective assistance of counsel. *Shedrick,* 493 F.3d at 299; see *United States v. Mustafa,* 238 F.3d 485, 492 (3d Cir. 2001) ("[A]ny alleged misrepresentations that Mustafa's former counsel may have made regarding sentencing calculations were dispelled when Mustafa was informed in open court that there were no guarantees as to sentence, and that the court could sentence him to the maximum.").
>
> This general rule applies with equal force where a claim of ineffective assistance of counsel is premised specifically on an alleged failure to explain, prior to a guilty plea, that a defendant might be classified as a career offender and subjected to enhanced penalties as a result. Wooten v. United States, No. 05–3172, 2005 WL 3454310, at *3 (D.N.J. Dec.16, 2005) (citing Nwachia v. United States, 891 F.Supp. 189, 196 (D.N.J.1995), which relied on the persuasive reasoning of Thomas v. United States, 27 F.3d 321 (8th Cir.1994)); see Jones v. United States, 131 F. App'x 819, 821–22 (3d Cir.2005) (finding no act or omission by counsel that would warrant a finding of ineffective assistance of counsel where attorney failed to advise defendant about the potential application of the career offender guideline). Where the court explains what the maximum penalty could be, that the court has discretion in imposing a sentencing, and that a sentence cannot be predicted until a Pre–Sentence Investigation Report is completed, counsel's failure to determine whether defendant is a career offender cannot result i n prejudice to defendant. United States v. Lambey, 974 F.2d 1389, 1394–95 (4th Cir.1992) (finding that it is Strickl and's second prong, prejudice, that is cured by an adequate plea colloquy); compare Wooten, 2005 WL 3454310, at *3 (citing Nwachia, 891 F.Supp. at 199 for the proposition that an adequate plea colloquy makes it impossible for defendant to prove that counsel's representation fell below an objective standard of reasonableness under Strickland's first prong).

Williams, 2014 WL 4060263 at *17.

Thus, in Williams, the court concluded:

Even accepting as true Williams' contentions that Attorney Lindsay both failed to advise and misadvised him with respect to whether and how the career offender guideline would apply to him, Williams cannot show prejudice because the court conducted an adequate plea hearing. At the July 26, 2011 change of plea hearing, after establishing that Williams was competent to plead guilty and had been afforded ample time to discuss his case with Attorney Lindsay, the court advised Williams about the minimum and maximum potential sentence under the statute, and explained the guidelines sentencing process, including that the guidelines are advisory and that a court has discretion with respect to arriving at a sentence.

11

> Williams confirmed that he understood these matters and that there were no other
> agreements or promises regarding his potential sentence.

Id. at *18 (citations omitted),

Here, even assuming that prior to Jones signing the Plea Agreement defense counsel did not explain to Jones that he could be sentenced to 188 to 235 months imprisonment and instead assured Jones that his juvenile convictions would not be held against him, which would result in a sentence of 70 to 87 months imprisonment, and therefore, defense counsel's fell below an objective standard of reasonableness, Petitioner has not established, and cannot establish, that any such misrepresentation prejudiced him. This is because a review of the Plea Agreement and the change of plea hearing transcript establishes that Jones was well aware of the potential sentencing ramifications of his guilty plea at the time he signed the Plea Agreement because the court conducted an adequate plea hearing, i.e. (1) the Court advised Jones of both the minimum and maximum potential sentence under the statute; (2) the Government explained that pursuant to the terms of the Plea Agreement the parties had stipulated that Jones was a "career offender" under the U.S.S.G., which equated to a sentencing guidelines range of 188 to 235 months imprisonment; (3) the Court explained to Jones the guidelines sentencing process, including that the Court has discretion in sentencing; and (4) Jones confirmed under oath that there were no other agreements or promises regarding his potential sentence.

Specifically, the Plea Agreement stated in relevant part: (1) "HARRISON ARNELL JONES and the United States Attorney further understand and agree to the following: 1. The penalty that may be imposed upon HARRISON ARNELL JONES is: (a) A term of imprisonment of not less than five (5) years to a maximum of forty years;" (2) "The parties stipulate that pursuant to U.S.S.G. §4B1.1, HARRISON ARNELL JONES is a career offender having committed this offense after sustaining two prior felony convictions of either a crime of

violence or a controlled substance offense. This stipulation represents the parties' best understanding on the basis of the information available as of the date of this agreement. This stipulation is not binding on the Court and does not preclude the parties from bringing to the attention of the United States Probation Office or the Court any information not within their knowledge at the time this agreement is executed;" (3) "The parties further agree that the adjusted base offense level should be raised to level 34 under section 4B1.1 (Career Offender) of the Guidelines;" (4) "Thus, the parties agree that HARRISON ARNELL JONES' overall offense level under the Sentencing Guidelines is 31;" (5) "The parties agree that as a career offender, HARRISON ARNELL JONES has a criminal history category of VI;" and (6) "The parties agree that, with a criminal history category of VI, the defendant has a guideline range of 188 to 235 months under the Sentencing Guidelines." Plea Agreement, ¶¶ C (1)(a), (2), (4), and (6) – (8).

Moreover, the Government stated the following about the terms of the Plea Agreement in open court: (1) "At paragraph C1, we set forth the mandatory minimum and maximum penalties that do apply to Mr. Jones;" (2) "At paragraph C2, the parties stipulate that Harrison Arnell Jones under Section 4B1.1 is a career offender, having committed this offense after sustaining two prior felony convictions of either a crime of violence or a controlled substance offense;" (3) "At paragraph C4, the parties further agree that the adjusted base offense level should be raised to a level 34 under Section 4B1.1, that's the career offender section of the guidelines;" (4) "Thus, at paragraph C6, we agree that Mr. Jones' overall offense level under the Sentencing Guidelines is a 31;" (5) "At paragraph C7, we agreed that as a career offender, Mr. Jones has a criminal history category of VI;" and (6) "And then finally at paragraph C8, we agree that with an offense level of 31 and a criminal history category of VI, the defendant has a guideline range of 188 to 235

months under the Sentencing Guidelines." Plea Transcript, pp. 12-13. It was not until the conclusion of this presentation of the terms of the Plea Agreement in open court that the Petitioner signed the Plea Agreement, Id. at p. 14.

Furthermore, during the change of plea hearing the Court explicitly asked Jones "[d]o you understand that the maximum penalties here are as follows: A term of imprisonment of not less than five years to a maximum of 40 years . . . . Do you understand the maximum penalties applicable to this crime?;" Petitioner replied "Yes, Sir." Guilty Plea Transcript, pp. 10-11. With respect to the terms of the Plea Agreement and Jones's understanding of the terms of the Plea Agreement and its consequences, the Court also asked: (1) "Mr. Jones, before you came to court today, did you have an opportunity to read and review the plea agreement and discuss it with your lawyer?;" (2) "Do you agree with all of its terms and conditions?;" (3) "Do you understand it? ;" and (4) "Do you understand that by virtue of just signing the plea agreement, as you did here in open court, you are once again attesting to the fact that by virtue of your signature you agreed with everything that's in it?." Id. at p. 14. Jones answered "Yes, sir" to all of these questions. Id. The Court also asked Petitioner "Now, has anybody made any promise, other than the plea agreement, that has induced or caused you to plead guilty today?". Id. at p. 15. Petitioner replied "No, sir." Id.

With respect to the United States Sentencing Guidelines process, the Court explained to Petitioner: (1) "Under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining sentences in criminal cases for offenses occurring after November 1st of 1987. Have you and Mr. Placidi talked about how the Sentencing Guidelines might apply to your case?;" (2) "Do you understand that I will not be able to determine the advisory guideline for your case until after the presentence report

14

has been completed and you and the government have had an opportunity to challenge the facts that are reported by the probation officer?;" (3) "Do you understand that after it has been determined what guideline sentence applies to a case, the judge has the authority, in some circumstances, to impose a sentence that is more severe or less severe than that called for by the guidelines, do you understand that?;" and (4) "Do you understand that if the sentence is more severe than you expected it to be, you will still be bound by your guilty plea and you'll have no right to withdraw it?". Id. at pp. 16-17. Petitioner replied "Yes, Sir" to all of these questions. Id.

The Court also asked Jones: "Except for your discussions with Mr. Placidi about Sentencing Guidelines, has anybody made any prediction or promise to you about what your sentence will be?" and "Has anything that I have said here today suggested to you what your actual sentence will be?". Petitioner responded "No, sir" to these queries. Id. Finally, the Court asked: "Have you been instructed by your counsel, by government counsel, or by anybody else to respond untruthfully to any question about a promised sentence?". Id. at p. 17. Jones answered "No." Id. at p. 18.

Having found that Petitioner has not established, and cannot establish, that his defense counsel rendered ineffective assistance of counsel, i.e. Jones's contention lacks merit, we further find that enforcement of Petitioner's waiver of his rights to collateral attack his sentence or conviction, including the right to file a motion to vacate sentence under 28 U.S.C. § 2255, will not work a miscarriage of justice. Accordingly, Petitioner's Motion to Vacate, Correct or Set Aside a Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 shall be denied.

**IV. Certificate of Appealability.**

Local Appellate Rule 22.2 of the United States Court of Appeals for the Third Circuit directs that when a final order denying a motion under § 2255 is entered a determination of

15

whether a certificate of appealability should issue also shall be made. Congress has mandated that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). Where, as here, the court denies relief on procedural grounds, a petitioner is entitled to a certificate of appealability only if he can demonstrate both that jurists of reason would find it debatable whether the petition states a valid claim of a denial of a constitutional right and that jurists of reason would find it debatable whether the court is correct in its procedural ruling. See, e.g., Slack v. McDaniel, 529 U.S. 473, 484 (2000); Bivings v. Wakefield, 316 Fed. Appx. 177, 179 (3d Cir. 2009).

The Court is satisfied that no reasonable jurist would find it debatable whether Petitioner's waiver of his collateral attack rights is enforceable or whether Petitioner has made a substantial showing of the denial of a constitutional right. Accordingly, the Court concludes that a certificate of appealability should not issue in this case.

An appropriate Order follows:

## ORDER

AND NOW, this ___20th___ day of January, 2016, it is hereby ORDERED, ADJUDGED, AND DECREED that Petitioner Harrison Arnell Jones's Motion to Vacate, Correct or Set Aside a Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 on March 13, 2014 [ECF 91] is DENIED and no certificate of appealability shall issue. The Clerk of Court shall mark CV14-87E as "CLOSED."

_Maurice B. Cohill, Jr._
Maurice B. Cohill, Jr.
Senior United States District Court Judge

16

cc: Harrison Arnell Jones
#33793-068
FCI-Elkton
P.O. Box 10
Lisbon, OH 44432